496 A.2d 752

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Stephen MILLS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 17, 1984.

Filed June 7, 1985.

Reargument Denied Aug. 12, 1985.

John Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, WIEAND and MONTGOMERY, JJ.

WIEAND, Judge:

Stephen Mills was tried by jury and was found guilty of burglary. It was his eighth conviction for the same offense. The trial judge, the Honorable James D. McCrud-

den, deferred sentencing pending receipt of a presentence investigation and a psychiatric evaluation. Thereafter, Mills was sentenced to serve a term of imprisonment for not less than ten nor more than twenty years. A petition for reconsideration was denied, and Mills appealed. He contends that the sentence exceeded that recommended by the sentencing guidelines, as set forth in 204 Pennsylvania Code, Chapter 303, without adequate reason. We disagree and affirm the judgment of sentence.

Appellant and the Commonwealth are agreed that the gravity score for appellant's offense is six; his burglary was committed in a structure adopted for overnight accommodations in which no person was present at the time of the offense. Two additional points are to be added for each prior offense. 204 Pennsylvania Code, Chapter 303.-7(b)(2)(ii). The maximum number of points for prior convictions, however, is six.[1] 204 Pennsylvania Code, Chapter 303.7(h). For a defendant with an offense gravity score of six and a prior record score of six, the guidelines recommend an aggravated minimum sentence of between 49 and 61 months and a mitigated minimum sentence of between 25 and 33 months.

Appellant concedes, as he must, that a sentencing court may deviate from the sentencing guidelines if it provides a contemporaneous written statement of its reasons for doing so. The adequacy of the court's reasons, of course, is subject to review on appeal. *Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453 (1984). In the instant case the sentencing court did provide a contemporaneous statement of reasons for imposing a sentence in excess of that recommended by the guidelines. Appellant argues, however, that the court's reasons were inadequate. He contends that, in reality, the only reason given by the sentencing court was that appellant had had seven prior convictions for burglary. This, he argues, demonstrated an

1. A prior record score of six equates with three prior convictions for burglary.

erroneous application of the guidelines and an unreasonable departure therefrom.

We reject appellant's argument. The reasons given by the sentencing court for imposing the maximum sentence authorized for burglary entailed a great deal more than the fact of seven prior convictions for burglary. The court explained:

> Mr. Mills, I have considered the presentence report, the psychiatric evaluation. I know what the guidelines suggest in this.

> But I think with your extensive record for burglaries and the fact that you just served a fairly severe sentence for burglary, and even after being released by the authorities, and while still on parole for that very offense of burglary, you go right ahead and burglarize another house.

> Probation hasn't helped. Even lengthy incarceration hasn't helped. You have complete disregard for people who own property. You don't hesitate for one minute to violate that in their homes. I think you have to be incarcerated and incarcerated for the maximum period of time.

> I'm imposing a sentence of 10 to 20 years.

Included in this statement, as the Commonwealth has argued, can be discerned the following reasons for imposing a sentence greater than that recommended by the sentencing guidelines. First, appellant was a repeat offender, having accumulated a record of seven prior convictions for the same offense. Second, all prior attempts to rehabilitate Mills had been unsuccessful. Third, Mills had been on parole when he committed the offense for which he was then being sentenced. Fourth, because Mills had established a pattern of disrespect for the homes and property of other persons, he had become a threat to the public. Finally, on the occasion of the sentence for the seventh offense, Mills had previously received a sentence of imprisonment for not less than three nor more than ten years. These

reasons were adequate to support the ten to twenty year sentence imposed by the court.

■ We also disagree with appellant's contention that irrespective of the number of prior convictions, a burglar can receive only that sentence prescribed for a three time offender.[2] To read the guidelines as placing a cap on the sentence to be imposed upon a career criminal is to encourage absurd results. In the first place, such an interpretation will for all practical purposes reduce the maximum sentence authorized by statute for the crime of burglary. A burglar who has seven, or ten, or twenty prior convictions for burglary will have to be sentenced as though he had only three prior convictions. This, we conclude, was not what the legislature intended. Secondly, it is difficult to perceive any reason more compelling for imposing a sentence in excess of that recommended by the guidelines than the fact of convictions for repetitive offenses committed even after release on parole from a lengthy sentence of incarceration. What, it may well be asked, is more persuasive that a career criminal has become a serious threat to society than the lengthy record which he has complied

2. The opinion of this Court in *Commonwealth v. Drumgoole*, 341 Pa.Super. 468, 491 A.2d 1352 (1985), does not command a different result. In that case, the sentencing court failed to impose the minimum sentence recommended by the sentencing guidelines and gave as its reason the defendant's lack of a prior record. In remanding, the Superior Court held that this was error because the defendant, in fact, did have a prior record. By way of dictum, the Court observed that an accused's lack of a prior record had already been considered by the sentencing commission in determining an appropriate sentence for a first time offender. Every first time offender started with a prior record score of zero, the Court reasoned, and an attempt by a sentencing court to reduce it below zero merely because of the absence of prior convictions would be improper.

The present case is different. It presents a factual pattern which was never considered by the Court in *Drumgoole*. Here, the sentencing court was sentencing Stephen Mills for an eighth conviction for burglary. This was a record far in excess of the record for which the sentencing commission deemed appropriate a prior record score of six. A court is not required to follow the guidelines where, as here, the defendant's prior record permits a court to infer that he is an incurable recidivist, that prior rehabilitative efforts have been unsuccessful, and that the defendant has become a threat to law-abiding citizens. *Drumgoole* does not hold otherwise.

while refusing to be rehabilitated? The guidelines do not establish mandatory sentences; they are recommendations only. Where societal protection commands a lengthier sentence, the guidelines do not stand as a bar.

In the instant case, the trial court sagely recognized that it was sentencing a career criminal who had become a menace to society. It was for this reason that the court imposed a sentence of incarceration for the maximum term allowed by the legislature.

The judgment of sentence is affirmed.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent. It is my belief that the holding in the instant case, if permitted to stand, will render the sentencing guidelines virtually meaningless. The rationale underpinning the holding is contrary to the letter and spirit of the guidelines and conflicts with precedent recently established in this court. The judgment of sentence in the instant case should be vacated and the case remanded for resentencing because the sentencing court failed to consider the guidelines before imposing sentence as it is required to do by statute. Alternatively, even if it be assumed that the court considered the guidelines, its reasons for deviating therefrom are wholly inadequate, thus necessitating remand.

The sentencing guidelines were promulgated in order to promote greater state-wide uniformity in sentencing. Although the guidelines were not meant to establish mandatory minimum sentences, 42 Pa.C.S. § 9721(b) requires that courts *consider* the guidelines before imposing sentence. By so legislating, it was the General Assembly's hope that the guidelines would weave rationality out of a sometimes chaotic criminal sentencing system wherein it was not uncommon that persons with similar prior records who were convicted of identical offenses would be given very dissimilar sentences simply because they were sentenced in differ-

ent courts. As former Pennsylvania House Member (now Judge) Scirica succinctly stated when he co-introduced the enabling legislation for the guidelines:

> We are amending a Senate bill, and this amendment changes the way we sentence criminals in Pennsylvania. The purpose of the amendment is to make criminal sentences more rational and consistent, to eliminate unwarranted disparity in sentencing, and to restrict the unfettered discretion we give to sentencing judges.

*Pennsylvania House Journal,* 3130 (September 21, 1978). Mr. Scirica also stated that "[i]t is the appeal that gives teeth to the guidelines." *Pennsylvania House Journal, supra,* at 3131.

> The guidelines are a means of promoting more equitable sentences by providing a common point of reference for all cases. The guidelines ensure that the same information is used in the same way as a starting point in reaching every sentencing decision. They are, thus, a tool to promote fairer, more certain sentences, and to discourage unwarranted disparity.

COMMONWEALTH OF PENNSYLVANIA COMMISSION ON SENTENCING; SENTENCING GUIDELINES IMPLEMENTATION MANUAL iii (1982).

42 Pa.C.S. § 9721(b) states: "The [sentencing] court *shall* ... consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing...." (Emphasis added.) The obligation to consider the guidelines prior to sentencing can in no way be regarded as discretionary. Although the court is not constrained to *follow* the guidelines, if it chooses not to, it must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S. § 9721(b). In *Commonwealth v. Royer,* 328 Pa.Super. 60, 69, 476 A.2d 453, 457 (1984) we held that "the judge's statement of reasons for the sentence made of record at sentencing in the defendant's presence constitutes a 'contemporaneous written statement', within the meaning of the act." In *Royer,* we clearly established that our power of review in

guidelines cases includes discerning whether or not the sentencing court's reasons for deviating are "adequate".

Importantly, the guidelines suggest only ranges for minimum and not maximum sentences. Maximum sentences are limited only by statute. For example, for the crime of burglary, a felony of the first degree, the statutory maximum is not more than twenty years. 18 Pa.C.S. § 1103(1). Statutory law does not mandate a minimum sentence for this offense.

The guidelines, set forth in 204 Pennsylvania Code, Chapter 303, found at 42 Pa.C.S. § 9721, group offenses into ten different categories.

| Offense Gravity Score | Prior Record Score | Minimum Range* | Aggravated Minimum Range* | Mitigated Minimum Range* |
|---|---|---|---|---|
| **10** Third Degree Murder** | 0 | 48-120 | Statutory Limit *** | 36-48 |
| | 1 | 54-120 | Statutory Limit *** | 40-54 |
| | 2 | 60-120 | Statutory Limit *** | 45-60 |
| | 3 | 72-120 | Statutory Limit *** | 54-72 |
| | 4 | 84-120 | Statutory Limit *** | 63-84 |
| | 5 | 96-120 | Statutory Limit *** | 72-96 |
| | 6 | 102-120 | Statutory Limit *** | 76-102 |
| **9** For example: Rape; Robbery inflicting serious bodily injury** | 0 | 36-60 | 60-75 | 27-36 |
| | 1 | 42-66 | 66-82 | 31-42 |
| | 2 | 48-72 | 72-90 | 36-48 |
| | 3 | 54-78 | 78-97 | 40-54 |
| | 4 | 66-84 | 84-105 | 49-66 |
| | 5 | 72-90 | 90-112 | 54-72 |
| | 6 | 78-102 | 102-120 | 58-78 |
| **8** For example: Kidnapping; Arson (Felony I); Voluntary Manslaughter** | 0 | 24-48 | 48-60 | 18-24 |
| | 1 | 30-54 | 54-68 | 22-30 |
| | 2 | 36-60 | 60-75 | 27-36 |
| | 3 | 42-66 | 66-82 | 32-42 |
| | 4 | 54-72 | 72-90 | 40-54 |
| | 5 | 60-78 | 78-98 | 45-60 |
| | 6 | 66-90 | 90-112 | 50-66 |
| **7** For example: Aggravated Assault causing serious bodily injury; Robbery threatening serious bodily injury** | 0 | 8-12 | 12-18 | 4-8 |
| | 1 | 12-29 | 29-36 | 9-12 |
| | 2 | 17-34 | 34-42 | 12-17 |
| | 3 | 22-39 | 39-49 | 16-22 |
| | 4 | 33-49 | 49-61 | 25-33 |
| | 5 | 38-54 | 54-68 | 28-38 |
| | 6 | 43-64 | 64-80 | 32-43 |

| | | | | |
|---|---|---|---|---|
| **6**<br><br>For example: Robbery inflicting bodily injury; Theft by extortion (Felony III)** | 0 | 4-12 | 12-18 | 2-4 |
| | 1 | 6-12 | 12-18 | 3-6 |
| | 2 | 8-12 | 12-18 | 4-8 |
| | 3 | 12-29 | 29-36 | 9-12 |
| | 4 | 23-34 | 34-42 | 17-23 |
| | 5 | 28-46 | 44-55 | 21-28 |
| | 6 | 33-49 | 49-61 | 25-33 |
| **5**<br><br>For example: Criminal Mischief (Felony III); Theft by Unlawful Taking (Felony III); Theft by Receiving Stolen Property (Felony III); Bribery** | 0 | 0-12 | 12-18 | non-confinement |
| | 1 | 3-12 | 12-18 | 1½-3 |
| | 2 | 5-12 | 12-18 | 2½-5 |
| | 3 | 8-12 | 12-18 | 4-8 |
| | 4 | 18-27 | 27-34 | 14-18 |
| | 5 | 21-30 | 30-38 | 16-21 |
| | 6 | 24-36 | 36-45 | 18-24 |
| **4**<br><br>For example: Theft by receiving stolen property, less than $2000, by force or threat of force, or in breach of fiduciary obligation** | 0 | 0-12 | 12-18 | non-confinement |
| | 1 | 0-12 | 12-18 | non-confinement |
| | 2 | 0-12 | 12-18 | non-confinement |
| | 3 | 5-12 | 12-18 | 2½-5 |
| | 4 | 8-12 | 12-18 | 4-8 |
| | 5 | 18-27 | 27-34 | 14-18 |
| | 6 | 21-30 | 30-38 | 16-21 |
| **3**<br><br>Most Misdemeanor I's** | 0 | 0-12 | 12-18 | non-confinement |
| | 1 | 0-12 | 12-18 | non-confinement |
| | 2 | 0-12 | 12-18 | non-confinement |
| | 3 | 0-12 | 12-18 | non-confinement |
| | 4 | 3-12 | 12-18 | 1½-3 |
| | 5 | 5-12 | 12-18 | 2½-5 |
| | 6 | 8-12 | 12-18 | 4-8 |
| **2**<br><br>Most Misdemeanor II's** | 0 | 0-12 | Statutory Limit *** | non-confinement |
| | 1 | 0-12 | Statutory Limit *** | non-confinement |
| | 2 | 0-12 | Statutory Limit *** | non-confinement |
| | 3 | 0-12 | Statutory Limit *** | non-confinement |
| | 4 | 0-12 | Statutory Limit *** | non-confinement |
| | 5 | 2-12 | Statutory Limit *** | 1-2 |
| | 6 | 5-12 | Statutory Limit *** | 2½-5 |
| **1**<br><br>Most Misdemeanor III's** | 0 | 0-6 | Statutory Limit *** | non-confinement |
| | 1 | 0-6 | Statutory Limit *** | non-confinement |
| | 2 | 0-6 | Statutory Limit *** | non-confinement |
| | 3 | 0-6 | Statutory Limit *** | non-confinement |
| | 4 | 0-6 | Statutory Limit *** | non-confinement |
| | 5 | 0-6 | Statutory Limit *** | non-confinement |
| | 6 | 0-6 | Statutory Limit *** | non-confinement |

*WEAPON ENHANCEMENT. At least 12 months and up to 24 months confinement must be added to the above lengths when a deadly weapon was used in the crime

**These offenses are listed here for illustrative purposes only. Offense scores are given in §303.7.

***Statutory limit is defined as the longest minimum sentence permitted by law.

The higher the *offense gravity score,* the more serious is the offense. For example, burglary (18 Pa.C.S. § 3502) is assigned offense gravity scores of 5, 6, and 7 depending on the type of burglary involved.

| *8 Pa.C.S. §* | *Offense Title* | *Statutory Classification* | *Offense Gravity Score* |
|---|---|---|---|
| 3502 | Burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present. | F1 | 7 |
| 3502 | Burglary of a structure adapted for overnight accommodation in which at the time of the offense no person is present. | F1 | 6 |
| 3502 | Burglary of a structure not adapted for overnight accommodation in which at the time of the offense any person is present. | F1 | 6 |
| | Burglary of a structure not adapted for overnight accommodation in which at the time of the offense no person is present. | F1 | 5 |

Once the "offense gravity score" is determined, a consideration of the *prior record score* is in order. The guidelines assign points for prior convictions of various crimes. The sum of all these points is the prior record score. The higher the score, the greater is the suggested sentence. For example, a prior conviction of murder is assigned three points, while prior convictions of two or three misdemeanors are assigned only one point. The guidelines unambiguously state: "The prior record score is the sum of points accrued under this section; *it cannot be greater than 6.*" 204 Pa.Code § 303.7(h) (Emphasis added).

A further feature of the guidelines is the aggravated and mitigated ranges. These ranges suggest that sentences

should vary if the court determines that either aggravating or mitigating circumstances are present. "The guidelines permit the consideration of any legal factor as an aggravating or mitigating circumstance." COMMONWEALTH OF PENNSYLVANIA COMMISSION ON SENTENCING; SENTENCING GUIDELINES IMPLEMENTATION MANUAL 15 (1982). However, "[o]rdinarily, sentences should not be aggravated or mitigated for circumstances incorporated in other provisions of the guidelines, such as ... prior record." *Id.* "Since there is a prior record score which adds points, this would not be an aggravating or mitigating factor." K.A. Jarvis, *Pennsylvania Crimes Code and Criminal Law* 95 (1983). Thus, ordinarily it would not be proper to sentence within the aggravated range if the only reason for so doing is that the person being sentenced has prior convictions. *See Commonwealth v. Mahlon W. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985).

## I

Turning to the instant case, defense counsel conceded at sentencing that an offense gravity score of six was appropriate for the defendant's crime. Defendant had seven prior burglary convictions. In calculating his prior record score, two points should be added for each prior conviction. 204 Pennsylvania Code Chapter 303.7(b)(2)(ii). As previously noted, the guidelines clearly limit the total to six points. "The prior record score ... cannot be greater than 6." 204 Pa.Code § 303.7(h). The Commission's intent to limit the prior score to six is given further articulation in the manual prepared by the Commission on Sentencing Guidelines. This manual is intended as a reference for those using the guidelines.[1] Among other things, the manual sets forth

---

1. 42 Pa.C.S. § 2153(a)(7) provides that the Commission shall have the power to: "Establish a research and development program within the commission for the purpose of: (i) Serving as a clearinghouse and information center for the collection, preparation and dissemination of information on Commonwealth sentencing practices. (ii) Assisting and serving in a consulting capacity to State courts, departments and agencies in the development, maintenance and coordination of sound sentencing practices." *See* the preface to the manual. The manual

examples of how the guidelines are to be implemented. One such example postulates a convict whose total points under the prior record score equals eight. However, the manual states: "Although the total number of points ... equals eight, the Prior Record Score cannot exceed 6...." COMMONWEALTH OF PENNSYLVANIA COMMISSION ON SENTENCING; SENTENCING GUIDELINES IMPLEMENTATION MANUAL 57 (1982). It cannot be seriously argued that the Commission's intention to limit the prior record score to six has not been clearly articulated. Yet, the majority concludes that for "[a] burglar who has seven, or ten, or twenty prior convictions for burglary ... to be sentenced as though he had only three prior convictions" is "not what the legislature intended." We disagree. The majority also states that "[t]o read the guidelines as placing a cap on the sentence to be imposed upon a career criminal is to encourage absurd results." We hardly think it necessary to defend the Commission's intention in limiting the prior record score to six. Since that intention, however wise or unwise, is clearly stated, the majority's holding contravenes the guidelines and also the legislative mandate that all sentencing courts "shall" consider the guidelines promulgated by the Commission. Our opinion of the Commission's wisdom in this matter is of little importance, but we note that to allow sentencing courts the unfettered discretion to impose whatever sentence above the suggested range they desire simply because the magic number of "six" has been exceeded is hardly consistent with the legislative desire for state-wide uniformity in sentencing. It is within the sentencing court's discretion to deviate from the guidelines in a proper case, but such deviation must be supported by adequate reasons. *Commonwealth v. Royer,* 328 Pa.Super. 60, 476 A.2d 453 (1984). An erroneous interpretation of the legislative intent (such as believing that a person with seven prior burglary convictions need not be limited to a prior record score of six) surely does not qualify as an adequate reason for deviating.

was published in 1982 in order to assist in the coordination of sound sentencing practices.

## II

42 Pa.C.S. § 9721(b) requires sentencing courts to consider the guidelines before imposing sentence. In the instant case, the court manifested its intent *not* to consider the guidelines. When defense counsel suggested that the court consider a specific sentence under the guidelines, the court stated: "I'm not going to go along with that. I consider him to be a repeater." (N.T. 11/22/83, 10–11). The court further stated: "Those guidelines are not set up for a person that has committed seven or eight burglaries." And, "[t]hat was to make some judges put some people in jail. That's how I feel about it." (N.T. 11/22/83, 12.) The court's interpretation of the legislative intent is erroneous. Because the court sentenced the appellant with the erroneous belief that the guidelines were not even applicable, it cannot be said to have considered the guidelines as an aid in sentencing appellant. This is a far different situation than where a court *first* considers the guidelines but then decides that even the mitigated or aggravated ranges do not adequately serve society's interests in that case. At the very least, I believe it our responsibility to insist that the court indicate that it understood and considered the guidelines. *See Commonwealth v. Royer, supra.*

## III

Even if it be argued that the court did in fact consider the guidelines, it failed to present adequate reasons for deviating therefrom. As previously noted, our power of review in guidelines cases includes ascertaining whether the reasons for deviating are "adequate." *Commonwealth v. Royer, supra.* In the instant case, the court's reasons for deviating were inadequate because one of its reasons was that appellant was a repeat offender. Despite the majority's characterization of this as but one of five reasons for deviating, a review of the sentencing transcript reveals that it was clearly the predominant reason.[2] The fact that

2. The following is excerpted from the sentencing hearing of November 22, 1983. (N.T. 11/22/83, 10–20).

MR. RAMMLER: I do not contest a prior record score of six. With those guidelines I suggest the minimum recommended range in this case is between 24 and 36 months.

THE COURT: I'm not going to go along with that.

MR. RAMMLER: Excuse me?

THE COURT: I'm not going to go along with that. I consider him to be a repeater.

.   .   .   .   .

And you don't get caught in all burglaries. I don't believe he did.

I think he's a burglar. He's been given opportunity after opportunity. He's been given probation. He's been given jail sentences. He hasn't learned anything.

MR. RAMMLER: I'm not arguing against a jail sentence. I'm simply suggesting that the guidelines take into consideration his prior record.

When the legislature created the guidelines, they made provisions for prior record. He has a prior record of six. We are not contesting that.

Without something beside his record however—

THE COURT: Those guidelines are not set up for a person that has committed seven or eight burglaries.

MR. RAMMLER: But the legislature made a decision. They set a maximum of six points. They said no matter what your record it should not be considered beyond this point.

They didn't have to put a cap on the prior record score. They made a decision following the Commission's recommendation to put a cap on the prior record score.

THE COURT: That was to make some Judges put some people in jail. That's how I feel about it.

MR. RAMMLER: It works both ways. I strongly believe that if this guideline sentence procedure is to be used with increased sentence in certain categories, and under certain circumstances it must then also be applied to ameliorate the impact with respect to certain other cases.

And I would suggest that in this case where the legislature said prior record score shall not exceed six no matter what, then they made a decision to take a person's prior record into consideration with respect to a sentence on any particular case.

They then allowed certainly for aggravated and mitigated circumstances.

I suggest in this case there are no aggravating circumstances as such.

.   .   .   .   .

THE COURT: But I will tell you. You like talking about aggravating circumstances. I consider one who just continues to break into houses, homes at one time or another, and does it with a pattern over years, is punished for it, doesn't pay any attention to it, then gets a fairly stiff punishment and learns nothing, I don't think he's fit to walk the streets. I think he's a threat to everybody.

And I consider burglary to be a very, very serious crime. And so does the legislature, too, when they give a 10 to 20 maximum.

MR. RAMMLER: I understand that but they then said that the sentences are supposed to be within a guideline unless there are aggravating circumstances, and suggest that the only aggravating circumstance in the Court's mind is his prior record.

But that's already taken into consideration in the guidelines. That's a six. That's the maximum prior record you can have under the guidelines. There's nothing about this case which makes it worse than any other burglary in the world.

    \*     \*     \*     \*     \*     \*

So that the recommended sentence of 24 to 36 months minimum range is—

THE COURT: The maximum range is what?

MR. RAMMLER: Maximum range we agree is 10 to 20 years.

THE COURT: No, no, on the aggravated range here.

MR. RAMMLER: The aggravated range here—

THE COURT: 49 to 61.

MR. RAMMLER: I have 36 to 45.

I still suggest that there are no aggravating circumstances. His record has been taken into consideration.

I understand your prior sentencing of Mr. Mills, but that predated the guidelines and the legislature said, the vast—

THE COURT: Let me tell you this. I'm not going to give him one sentence and then the next time I have him for the very same offense give him a lesser sentence.

MR. RAMMLER: However, if the intention, the legislature made a decision that the disparity of sentences within the Commonwealth was so great that a guideline had to be set.

THE COURT: I know, but this is only a recommendation. I have to account to them why I do it and I have to account to the Superior Court why I do it. And I'm willing to do it.

I'm ready to sentence him.

Mr. Mills, I have considered the pre-sentence report, the psychiatric evaluation. I know what the guidelines suggest in this.

But I think with your extensive record for burglaries and the fact that you just served a fairly severe sentence for burglary, and even after being released by the authorities, and while still on parole for that very offense of burglary, you go right ahead and burglarize another house.

Probation hasn't helped. Even lengthy incarceration hasn't helped. You have complete disregard for people who own property. You don't hesitate for one minute to violate that in their homes. I think you have to be incarcerated and incarcerated for the maximum period of time.

I'm imposing a sentence of 10 to 20 years.

MR. RAMMLER: If the Court please, will you entertain—

THE COURT: He deserved it. He deserved it.

MR. RAMMLER: If the Court please, this case, while I understand your concern for his record, I reiterate that the legislature has taken into consideration the prior record. I don't understand how 10 to 20 years is a benefit to society as opposed to or will—

appellant was a repeat offender is not an adequate reason for deviating because the guidelines have already taken this factor into consideration in the prior record score. The recent case of *Commonwealth v. Mahlon W. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985) dealt with a similar problem. There, the sentencing court deviated from the guidelines not by sentencing *above* the suggested range as was done in the instant case but by sentencing below it. Since the goal of the guidelines is state-wide uniformity in sentencing, we do not deem the two situations to be at all dissimilar. The sine qua non of both is deviation from the guidelines. In *Drumgoole,* one of the four factors considered by the sentencing court in deciding to deviate from the guidelines was the defendant's lack of a prior record. This court wrote:

> [T]he guidelines inherently give credit to those who have led a relatively law abiding life. An accused's prior record, or lack thereof, is one of the two elements utilized in determining the guideline sentence ranges. The guideline sentence as computed in this case is based on a prior record score of zero (0). Thus, to assign the lack of, or even a minimal, prior record as a reason for deviating from the guidelines is to, in effect, give an accused credit for the same factor twice. Such an evaluation is error.

*Drumgoole,* 341 Pa.Super. at 475, 491 A.2d at 1355.

In the instant case, the sentencing court's predominant reason for deviating from the guidelines was that the defendant is a repeat offender. This factor was, in effect, used against the defendant twice—once by the guidelines themselves in the prior record score and once by the court when it deviated from the guidelines. Therefore, the holding in the instant case conflicts with *Drumgoole.*

THE COURT: Keep him out of somebody else's house, that's what it will do.

MR. RAMMLER: He has never been a violent person if you look at his record. We agree he does not have a history of violence. I agree he has a history of property crimes.

Moreover, we note that the holding is at odds with the spirit of the guidelines. "Ordinarly, sentences should not be aggravated or mitigated for circumstances incorporated in other provisions of the guidelines, such as ... prior record." COMMONWEALTH OF PENNSYLVANIA COMMISSION ON SENTENCING; SENTENCING GUIDELINES IMPLEMENTATION MANUAL 15 (1982). In the instant case, the sentencing court went beyond even the aggravated range and *doubled* the sentence suggested under it. Its predominant reason for so doing was "for circumstances incorporated in other provisions of the guidelines."

Another of the court's reasons for deviating which may be discerned from the sentencing court's comments at sentencing is that burglary is a very serious offense. (N.T. 11/22/83, 15). This factor, too, has already been taken into consideration within the guidelines themselves as the *offense gravity score* is based on the severity of crimes. This, too, conflicts with *Commonwealth v. Drumgoole, supra,* and cannot be considered an adequate reason for deviating.

We emphasize that the instant case does not represent a *de minimis* deviation from the guidelines' suggested range. The deviation here is extreme. For a defendant convicted of burglary with an offense gravity score of six and a prior record score of six, the guidelines suggest a minimum sentence within the 33–49 month range. The aggravated minimum is 49–61 months while the mitigated minimum is 25–33 months. The sentencing court, however, imposed a minimum sentence of 120 months, approximately doubling the highest end of the aggravated range. To appreciate the severity of this deviation, we note that for the crime of third degree murder, with an offense gravity score of ten (the highest score possible) and a prior record score of five, the suggested minimum range is 96–120 months. For the crime of rape, with an offense gravity score of nine and a prior record score of six, the suggested minimum range is

78–102 months. The commission believed both of these crimes to be more serious than the one appellant was charged with, but his sentence surely does not reflect this. The more extreme the deviation from the guidelines, the greater the necessity for sound reasoning in support thereof. The lower court has not provided the requisite reasoning here.

The sentencing guidelines are complex and it is evident that much consideration was given their formulation. Even though they are merely "suggestions" which need not be followed when sentence is imposed, the legislature has *mandated* that the courts *consider* these suggestions. By its very nature, this mandate presents practical problems on appeal as we must inquire into the court's subjective intent to decide whether the mandate has been carried out. We can do this only by examining the words spoken by the court at sentencing. We must accord the sentencing court's discretion the highest deference except in those rare instances where the court has manifested a disregard for the guidelines and deviated therefrom without sound reason. The instant case fits this situation. We fear the holding in the instant case will send an unwise signal to sentencing courts and will grant them license to selectively pick and choose which portions of the guidelines they will follow and which portions they will ignore. Our judicial duty is to do no less than fully comply with the letter and spirit of this product of the legislative prerogative. In light of the majority's holding, we fear that the proper application of the guidelines will be quagmired in uncertainty and confusion until our Supreme Court provides a definitive analysis of the guidelines' proper role in this state's criminal justice system. For these reasons, I respectfully dissent.