546 A.2d 726

James Harmon, Appellant *v.* Commonwealth of
Pennsylvania, Appellee.

2

Argued April 18, 1988 before Judges MACPHAIL and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*James J. DeMarco,* for appellant.

*Janice V. Quimby,* Special Deputy Attorney General, for appellee.

OPINION BY SENIOR JUDGE NARICK, August 19, 1988:
Following a jury trial in Bucks County, James Harmon (Appellant) was convicted of criminal conspiracy and three violations of Pennsylvania's Solid Waste Management Act (Act).[1] He was sentenced to three

---

[1] Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§6018.101-6018.1003.

terms[2] of six to twelve months each, to run consecutively, and to $3,000 in fines plus costs of prosecution. Appellant appealed to Superior Court, which, upon the Commonwealth's motion, transferred the matter to this Court.

Appellant ran a waste disposal company, United Hospital Services. He had contracted with Montefiore Hospital in the Bronx, New York to remove the infectious waste from Montefiore and its affiliate, Albert Einstein Hospital. The contract provided for disposal of the waste by incineration at Rowlands Environmental Services, Inc. in New Jersey. The waste to be removed and incinerated was so-called "red bag" waste. Hospital personnel were trained to segregate certain types of infectious waste, such as used IV tubing, syringes, blood and serum vials, etc., by placing it in red plastic bags. These bags were kept separately from the remainder of the hospital waste, and were to be disposed of by incineration at high temperatures designed to kill any pathological organisms.

Appellant had held the contract with Montefiore since October, 1983. He began experiencing difficulties finding incineration sources due to cost and a competitor's efforts to drive him out of business. Rowlands had apparently proved to be too expensive early on and he used a variety of incinerators before the summer of 1985. During that same period, he was attempting to get a permit from the Pennsylvania Department of Environmental Resources (DER) for an incinerator he had purchased and completely overhauled. (The permit was ultimately denied because Appellant had lost his lease for the incinerator site.) During the summer of 1985, Appellant was nearing bankruptcy and could no longer

---

[2] The trial court determined that the last of the three violations of the Act merged with the other two for purposes of sentencing. *See* note 9 below.

afford the charges at the few incinerators still open to him. He continued to collect the hospital waste, using Raymond Coakely, Sr. and his son, truckers who worked out of the same warehouse as United Hospital Services, to transport the waste from New York to the warehouse site in Norristown. (The Coakelys were named as unindicted co-conspirators by the Commonwealth and testified on its behalf.)

Coakely, Sr. testified that he put Appellant in contact with Mark Decker,[3] who had a 180-acre piece of property in Nockamixon Township, Bucks County, site of an old landfill, where Appellant could dispose of the hospital waste.

Coakely's son testified that he delivered several trailer loads of the hospital waste to the Nockamixon site, both from the warehouse in Norristown and directly from the New York hospitals. He left some trailers full of red bag waste at the site, while others were unloaded onto the ground by Appellant and his workers and set afire using kerosene.

On September 25, 1985, there was a fire on Decker's property to which the local police and fire departments responded at approximately 8:00 p.m. No one was on the property at the time. David Bonham, a fireman, testified that the fire was about 20 feet square, and appeared to be burning rubbish in plastic bags. One of the unburned items the firemen discovered was a closed plastic pail which contained used syringes. While fighting the fire, Mr. Bonham's boot was pierced by a needle which entered his foot. He was taken to the hospital for a hepatitis shot. Several days later, upon inspecting the fire equipment, he and the other firemen found two to three dozen needles imbedded in the truck tires, hoses and the firemen's boots.

---

[3] Decker was indicted and tried along with Appellant and his corporation. The jury acquitted him of all charges.

Several weeks later, on October 18 and 19, 1985, Decker's Nockamixon property was the subject of a search. Seven or eight trailers containing red bag waste were discovered. In addition, the old landfill site was excavated, and evidence of hospital waste, such as syringes, IV tubing, test tubes and pieces of red plastic bags, was discovered. Appellant was subsequently arrested and charged with conspiracy and several violations of the Act.

On appeal, Appellant raises eight issues for our resolution. For organizational purposes, we shall address these issues chronologically.

Appellant argues that jurisdiction over this appeal lies in Superior Court, presumably because of the conspiracy conviction. Our jurisdiction over criminal violations of the Act arises from Section 762(a)(2)(ii) of the Judicial Code, 42 Pa. C. S. §762(a)(2)(ii), which provides, in relevant part:

> [T]he Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:
>
> . . . .
>
> (2) Governmental and Commonwealth regulatory criminal cases.—All criminal actions or proceedings for the violation of any:
>
> . . . .
>
> (ii) Regulatory statute administered by any Commonwealth agency. . . . The term 'regulatory statute' as used in this sub-paragraph does not include any provision of Title 18 (relating to crimes and offenses).

The Act, by its terms, is a regulatory statute. *See* Section 104(6), (11), 35 P.S. §6018.104(6), (11). The DER is given the power under those sections and Section 1901-A of The Administrative Code of 1929,[4] to

---

[4] Act of April 9, 1929, P.L. 177, *added by* Act of December 3, 1970, P.L. 834, 71 P.S. §510-1(15).

regulate the various activities involved in waste disposal and to institute prosecution where violations are discovered. Despite the fact that Appellant was convicted of criminal conspiracy under Section 903 of the Crimes Code, 18 Pa. C. S. §903, this Court has previously held, in the interest of judicial economy, that where we have jurisdiction over criminal violations of a regulatory statute, we may also have jurisdiction over a closely-related conspiracy charge. *Commonwealth v. Tyson*, 57 Pa. Commonwealth Ct. 569, 427 A.2d 283 (1981). We see no distinguishing factors here to cause us to deviate from this reasoning.

The second issue we shall consider is Appellant's allegation of prosecutorial misconduct for statements made by the prosecutor in her opening remarks to the jury.[5] The comments with which Appellant takes issue were as follows:

> Now, you, the members of the jury, have been selected specifically because all the parties concerned feel that you fourteen people are capable of making a fair, impartial decision based exclusively on the evidence presented by the parties during the trial. And the Commonwealth does not want to convict innocent persons.

Appellant's counsel objected at the time and while the trial judge overruled the objection, he also reiterated to the jury that the prosecutor was merely outlining what she sought to prove. Appellant moved for a mistrial the following day, arguing that the remarks were highly prejudicial. The Commonwealth argues that by failing to move for a mistrial immediately or to ask for a curative amendment, Appellant has waived the right to now

---

[5] While these statements were not included in the original transcription, they have since been transcribed by the official court reporter. This transcript has been made a part of the record on appeal.

press the issue. Even assuming that the objection operated to preserve the issue, we fail to see how this remark could be so prejudicial to Appellant's case as to require a mistrial.

The determination of whether or not to order a mistrial is within the trial court's discretion and we will only reverse that determination upon a showing of abuse of that discretion. *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983). It is well settled that:

> comments by the Commonwealth's attorney do not constitute reversible error unless the 'unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.'

*Id.* at 282, 461 A.2d at 211 (citation omitted). We are unable to conclude that the trial court abused its discretion in finding that the above-quoted comment did not unavoidably prejudice the jury.

Appellant raises two issues with respect to the conduct of the trial. First, he alleges error in the trial judge's failure to admit a document he received from the Commonwealth during discovery. The document in question was apparently a report by the Bucks County Board of Health which indicated that no danger to the public existed at the Nockamixon landfill following the fire. The author of the document was not called to testify and the Commonwealth refused to stipulate to its authenticity. Appellant claims that the judge should have either allowed the admission of the document or compelled the Commonwealth to authenticate it. Not surprisingly, no case citations accompany this novel argument. Suffice it to say that Appellant could have subpoenaed the author of the document to authenticate the exhibit, particularly if he considered it a crucial ele-

ment of his defense. The trial court did not err in refusing to admit the report without authentication.

Second, Appellant contends that the trial judge erred in allowing the Commonwealth to use evidence of his prior conviction on bribery charges for impeachment purposes. This argument is based, *inter alia,* upon our Supreme Court's decision in *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). In that decision, the Court limited the use of evidence of prior convictions on rebuttal to those crimes involving dishonesty or false statement, and set forth certain factors to be considered by the trial court judge in determining whether to admit the evidence. These factors were further refined in *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978). However, in *Commonwealth v. Randall,* 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987), the Court significantly modified the rule to the following: "evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date." We agree with the trial court that the 1984 bribery conviction, as a crime involving dishonesty or false statement, was admissible for impeachment purposes under the rule enunciated in *Randall.*

Appellant next contends that the Commonwealth failed to prove all of the elements of the crime of conspiracy,[6] which requires a showing of specific intent,[7]

---

[6] Conspiracy is defined in part as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission:

1) he agrees with such other person or persons that they or one or more of them will engage in conduct which

because the court did not require proof that Appellant knew that the Nockamixon landfill did not have a permit. The Commonwealth argues that Appellant has raised that precise issue for the first time on appeal, and that the issue, therefore, is waived.

Pa. R. Crim. P. 1123 provides that "only those issues raised and the grounds relied upon in the [post-verdict] motions that are stated specifically and with particularity may be argued or heard," and that any issues not raised in the post-verdict motions may not be raised on appeal. *See also* Pa. R. A. P. 302(a). From Appellant's motion for a new trial and in arrest of judgment, it appears that Appellant previously argued that the trial judge erred in refusing to charge the jury that an element of the violations of the *Act* was that Appellant had to have knowledge that no permit existed for the landfill. The trial court rejected that argument, noting that Section 606(i) of the Act, 35 P.S. §6018.606(i), specifically imposes absolute liability for the violations of which Appellant was convicted. Appellant has not alleged error with respect to that determination, but rather asserts that the *conspiracy* conviction must fall because of the trial court's failure to require knowledge that the site was not permitted. The only reference to this argument in the record appears in the transcript of the hearing on Appellant's motion to reconsider the sentence imposed, after the post-verdict motions had been decided. The trial judge considered Appellant's verbal

---

constitutes such crime or an attempt or solicitation to commit such a crime. . . .

18 Pa. C. S. §903(a)(1).

[7] We note that the trial court's charge to the jury included clear instructions that a conspiracy constitutes an agreement to "engage in conduct which constitutes criminal activity, . . . with the intent of committing criminal activity." (N.T. September 12, 1986 at 25). Appellant raised no objection to this aspect of the charge.

request at that time to be a *nunc pro tunc* motion in arrest of judgment and denied the motion. Appellant has not alleged that the trial court's refusal to hear his untimely motion was error. Accordingly, the issue has not been preserved, and we will not address its merits.

Appellant's next allegation of error is that the trial court improperly directed the jury to return for further deliberations when it was discovered that there was a mistake in the verdict as announced by the foreperson. The foreperson had announced the verdict as "not guilty" on counts 1, 3, 7, 8 and 9 and stated that no verdict has been reached with respect to counts 2, 4 and 6.[8] The record reveals that one of the other jurors interjected at that point and the following colloquy took place between the court and that juror:

JUROR NUMBER FOUR:   I know I'm not allowed to address the Court—

THE COURT:   That's correct.

JUROR NUMBER FOUR:   Can I talk to my peers?

THE COURT:   In the jury room, and you can send a note out, because I'm requiring to you [sic] go back and deliberate on counts two, four and six.

JUROR NUMBER FOUR:   We feel there's an error in the record what was said, sir.

THE COURT:   There may well be, so in that case, go back into the jury room.

JUROR NUMBER FOUR:   Can we have that piece of paper? Could we consult that?

THE COURT:   Yes. Go back in the jury room. Get this straightened out.

(N.T. September 12, 1986 at 59-60). Approximately an hour and one-half later, at 12:20 a.m., the jury returned

---

[8] Count 5 was withdrawn by the Court prior to the submission of charges to the jury.

with a unanimous verdict, finding Appellant not guilty on counts 1-4 and guilty on counts 6-9.[9]

Appellant declined the opportunity to poll the jury, thereby foreclosing the possibility of

> definitely determining, before it is too late, whether the jury's verdict reflects the conscience of each of the jurors or whether it was brought about through the coercion or domination of one of them by some of his fellow jurors or resulted from sheer mental or physical exhaustion of a juror.

---

[9] Specifically, counts 6-8 were, respectively, violations of Section 610(4), (6) and (9) of the Act, 35 P.S. §6018.610(4), (6), (9). Those subsections provide:

It shall be unlawful for any person . . . to:

. . .

(4) Store, collect, transport, process, treat, or dispose of, or assist in the storage, collection, transportation, processing, treatment, or disposal of, solid waste contrary to the rules or regulations adopted under this act, or orders of the department, or any term or any condition of any permit, or in any manner as to create a public nuisance or to adversely affect the public health, safety and welfare.

. . .

(6) Transport or permit the transportation of any solid waste to any storage, treatment, processing or disposal facility or area unless such facility or area possesses a permit issued by the department to accept such wastes, or contrary to the rules or regulations adopted under this act, or orders of the department, or in such a manner as to adversely affect or endanger the public health, safety and welfare or environment through which such transportation occurs.

. . .

(9) Cause or assist in the violation of any provision of this act, any rule or regulation of the department, any order of the department or any term or condition of any permit.

Count 9 was the criminal conspiracy charge.

*Commonwealth v. Martin,* 379 Pa. 587, 593, 109 A.2d 325, 328 (1954). Because the original oral verdict had not yet been recorded, and there was apparently a mistake in the foreperson's pronouncement, the trial judge did not err in directing the jurors to continue with their deliberations and "straighten[] out" the mistake. *See Commonwealth v. Craig,* 471 Pa. 310, 313, 370 A.2d 317, 319 (1977) ("[t]o correct an error of substance in a verdict prior to its recording, the court may send the jury back with additional instructions for further deliberation"); *Commonwealth v. Minoff,* 363 Pa. 287, 297, 69 A.2d 145, 150 (1949) ("if there is a mistake in the verdict as orally given by the jury in open court, it may be corrected until officially recorded").

Appellant's final two arguments both relate to sentencing. First, he contends that he should have been sentenced only on the conspiracy count and not for the violations of the Act. For this proposition, he relies on Section 903(c) of the Crimes Code, 18 Pa. C. S. §903(c), which provides: "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." While that section very clearly states that one may only be convicted of one *conspiracy* where multiple criminal objectives are involved, it does not mention merger with the underlying crimes which flow from the conspiratorial agreement. The trial judge followed the well established principle that the "crime of criminal conspiracy does not merge with the completed offense which was the object of the conspiracy." *Commonwealth v. Miller,* 469 Pa. 24, 26, 364 A.2d 886 (1976).

The final argument we must address is that the trial court erred in applying the sentencing guidelines. Appellant argues, in effect, that the appropriate sentence should have been either probation or the 0 to 6 months

minimum sentence under Section 9721 of the Sentencing Code, 42 Pa. C. S. §9721, for misdemeanors of the third degree. The trial court, in compliance with the mandates of Section 9721, considered both the mitigating factors presented by defense counsel and the aggravating factors put forth by the Commonwealth. It rejected Appellant's arguments in support of mitigation: that Appellant was a hard-working businessman, the father of eight, who was forced into the actions which resulted in his conviction because of business pressures from his competitor, financial difficulties, and the dilatory action of the DER in taking over one year to reject his application for an incinerator permit. Rather, the court focused upon the following aggravating factors: that Appellant committed the crimes of which he was convicted while on work release from his felony conviction arising out of the same set of circumstances (bribery to dispose of red bag waste); that Appellant continued to collect the hospital waste after he had exhausted all avenues of disposing of it properly; that Appellant appeared not to appreciate the gravity of the violations, which he considered technical in nature and for which he demonstrated no remorse; and that Appellant's activity presented a hazard to the community and the public health.

The sentencing guidelines require that the trial judge state on the record the aggravating circumstances which he considered in imposing a sentence within the aggravated minimum range. *Commonwealth v. Hoover*, 342 Pa. Superior Ct. 163, 492 A.2d 443 (1985). This the court clearly did. In considering whether the sentencing court's judgment was correct, the Superior Court has held that a sentencing judge may consider any legal factor in deciding whether a defendant should be sentenced within the aggravated range. *Id.* Appellant, relying on *Commonwealth v. Stevens*, 349 Pa. Superior Ct.

310, 503 A.2d 14 (1986), argues that it was improper for the trial judge to take his previous conviction into account, because a prior record score is built into the sentencing guidelines tables. *See* 204 Pa. Code §§303.7, 303.9. While *Stevens* may be said to stand for the proposition that a prior conviction may not be the sole basis for sentencing within the aggravated range, we do not believe that that was the basis of the trial court's determination. Rather, it expressed concern that, while on work release from the prior conviction, the Appellant continued his criminal activities, committing the violations at issue. The *Stevens* court recognized the distinction between the factors with which it was concerned and a case such as *Commonwealth v. Mills*, 344 Pa. Superior Ct. 200, 496 A.2d 752 (1985), which we find more closely analogous to the present situation. In *Mills*, wherein a sentence beyond the aggravated minimum range was imposed, several aggravating factors were present, including the fact that the defendant had committed the burglary there at issue while on parole from a previous conviction.

In reviewing the sentence imposed, we are mindful that a sentencing judge's decision regarding the aggravation of a sentence will not be disturbed absent a manifest abuse of discretion. *Hoover.* Applying that standard here, we see no reason to disturb the sentence. We find no merit in Appellant's argument that the judge was pre-disposed to impose the maximum because of his allegedly improper view of the evidence. Despite the fact that the court referred to the red bag waste as "hazardous", which by strict definition under the Act[10] it clearly is not, it is obvious that the court was employing that term as it is commonly used as a synonym for dangerous. Different and more severe penalty provisions

---

[10] *See* Section 103, 35 P.S. §6018.103.

prevail where hazardous waste, as defined by the Act, is concerned[11] and the Court obviously noted the distinction in sentencing Appellant under Section 606(b) of the Act, 35 P.S. §6018.606(b), which does not mention hazardous waste.

For all of the above reasons, we hereby affirm the order of the Court of Common Pleas of Bucks County.

## ORDER

AND NOW, this 19th day of August, 1988, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

---

[11] *See, e.g.,* Section 606(d), (f), (g), 35 P.S. §6018.606(d), (f), (g).