J-S11010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK JENKINS | : | |
| | : | |
| Appellant | : | No. 2208 EDA 2016 |
| | : | |

Appeal from the Judgment of Sentence April 1, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-15-CR-0011317-2014

BEFORE:  OTT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 12, 2018**

Mark Jenkins appeals from the judgment of sentence imposed on April 1, 2016, in the Court of Common Pleas of Philadelphia County.  Jenkins entered an open guilty plea to charges of aggravated assault, possessing a firearm as a prohibited person, carrying an unlicensed firearm, and possession of an instrument of crime.[1]  The trial court sentenced Jenkins to an aggregate sentence of ten to 20 years' imprisonment.  Jenkins contends his plea was involuntary "as the trial court was coercive where [Jenkins] rejected the Commonwealth's offer of 10 to 20 years['] confinement, yet the trial court none-the-less [sic] made [Jenkins] a new offer to enter an open guilty plea with the inducement that [Jenkins] would likely be given a better sentence

_____

[1] 18 Pa.C.S. §§ 2702, 6105, 6106, and 907(b), respectively.

than the Commonwealth offered if he pled guilty than if he went to trial and was convicted." Jenkins' Brief at 3. Based upon the following, we affirm.

The trial court has fully summarized the factual background relevant to this appeal. *See* Trial Court Opinion, 11/15/2015, at 1-5. Therefore, we do not restate it here. We simply note that, following the April 1, 2016, sentencing hearing, Jenkins filed a motion for reconsideration of sentence on April 6, 2016, and a separate motion to withdraw his guilty plea on April 11, 2016. On July 7, 2016, the trial court denied Jenkins' motion for reconsideration, and on July 12, 2016, Jenkins filed a notice of appeal. By order entered September 20, 2016, Jenkins' motion to withdraw his guilty plea was denied by operation of law. Jenkins filed a timely Pa.R.A.P. 1925(b) statement on October 12, 2016, after the notes of testimony became available.

The trial court, in its Pa.R.A.P. 1925(b) statement, has fully addressed Jenkins' claim that his plea was involuntary because the trial court induced him to plead guilty. *See* Trial Court Opinion, 11/14/2016, at 5-8 (finding Jenkins' plea was knowing and voluntary because (1) the trial court and Jenkins engaged in extensive discussion regarding the potential minimum sentences that Jenkins could receive, (2) the trial court specifically told Jenkins that "I can't tell you what the sentence would be, whether it be the 8½ to 17 or 10 to 20, because I don't know enough about you. A presentence, which will fill me in on all the other details, on the things I have to consider. That is just the starting point." [N.T., 10/21/2015, at 7], (3) the trial court

confirmed with Jenkins that he understood the range of sentences, (4) during the sentencing hearing, the trial court allowed Jenkins to consult with his attorney twice, and after Jenkins' second consultation with his attorney, the trial court confirmed that there were no promises or threats for Jenkins to enter into a guilty plea, and (5) given the extensive colloquy, Jenkins' responses, and the trial court's observations of Jenkins' demeanor as he was giving those responses, the trial court was satisfied that Jenkins understood the potential range of sentences he could receive and that he was not induced, promised, coerced or threated to plead guilty).

Our review confirms the trial court's analysis and its conclusion that Jenkins' claim that his plea was involuntary warrants no relief. Accordingly, we affirm on the basis of the trial court's November 14, 2016 opinion, at pages 1-8.[2]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/18

---

[2] In the event of further proceedings, the parties are directed to attach a copy of the trial court's November 14, 2016, opinion to this memorandum.

FILED

NOV 1 4 2016

Criminal Appeals Unit
First Judicial District of PA

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CRIMINAL

COMMONWEALTH OF PENNSYLVANIA       CP-51-CR-0011317-2014

VS.                            2208 EDA 2016

MARK JENKINS



CP-51-CR-0011317-2014 Comm. v. Jenkins, Mark
Opinion

7524918871

## OPINION

Defendant Mark Jenkins pleaded guilty to aggravated assault, two violations of the Uniform Firearms Act ("VUFA"), and possession of an instrument of crime ("PIC"). The trial court sentenced Defendant to a guideline sentence of 10 years to 20 years of incarceration. Defendant filed a timely appeal in which he argues: (1) Defendant did not enter a knowing and voluntary guilty plea, (2) the trial court abused its discretion by not allowing defendant to withdraw his guilty plea because his plea was not voluntary, and (3) the trial court imposed a manifestly excessive sentence. For the reasons stated below, the Superior Court should affirm the judgment of sentence.

## FACTUAL BACKGROUND

On October 21, 2015, following jury selection and one day of trial testimony, Defendant pleaded guilty to aggravated assault, two counts of VUFA and PIC. The trial court colloquyed Defendant to ensure that his decision to forego trial and enter into a guilty plea was knowing, intelligent, and voluntary. During the guilty plea hearing, the trial court and Defendant had the following exchange:

| | |
|---|---|
| **THE COURT:** | Mr. Jenkins, do you understand the Commonwealth has offered a new sentence, if you want to resolve it by way of a guilty plea, of ten to 20 years? |
| **DEFENDANT:** | Yes. |
| **THE COURT:** | You talked with your attorney here. That is my understanding, the merit of continuing the trial. |
| **DEFENDANT:** | Yes. |
| **THE COURT:** | Was that your decision to take that or go to trial? |

**DEFENDANT:** I want to go to trial.

**THE COURT:** Have any promise or threats been made to you to make that decision?

**DEFENDANT:** No. Well, yeah. I got threatened with a 10-to-20-year sentence, that is a threat to me.

**THE COURT:** Okay. And [prosecutor], if he were to plead open, would it be on the ag or attempted murder?

**PROSECUTOR:** He wants to plead guilty to the ag, 6105, 6106 and the PIC, but I'd also like to put something else on the record when you're done that part.

**THE COURT:** Sure. Do you understand if you plead guilty, it will be to the aggravated assault, the guidelines on that, which I think I stated about 102 months to 120, which would be 8 1/2 years as a standard guideline sentence, 8 1/2 to 17 on the low end, 10 to 20 on the upper end. Those -- I couldn't tell you what the sentence would be, because I don't know enough about you and the other sentences, which are the violation of the uniform firearms act and PIC, you say?

**PROSECUTOR:** Yes.

**THE COURT:** Those would likely be concurrent. Of course, they can be consecutive and those carry separate penalties of ten and seven and five years. Do you understand that?

**DEFENDANT:** Uh-huh.

**THE COURT:** Yes.

**DEFENDANT:** Yes. You just said that the open plea carries eight and ten, right?

**THE COURT:** Well, these are just guidelines.

**DEFENDANT:** Yes.

**THE COURT:** The guidelines are advisory and for every court, they're a starting point. On the low end of the guidelines would be 8 1/2 years.

**DEFENDANT:** Okay.

**THE COURT:** The upper would be the maximum 10 years. So if I were to give you a guideline sentence, it can be anywhere from 8 1/2 to 10 years a minimum sentence.

**DEFENDANT:** Okay.

**THE COURT:** I could mitigate 12 months. I wouldn't mitigate because you already started trial. There's no acceptance of responsibility prior to trial, which would be in a circumstance, where I do think that would be appropriate to mitigate. I can't tell you what the sentence would be, whether it be the 8 1/2 to 17 or 10 to 20, because I don't know enough about you. A presentence, which will fill me in on all the other details, on the things that I have to consider. That is just the starting point. What I'm telling you also is that the other convictions, which would be the two violations of the uniform firearms act and the PIC, those would likely run concurrent, meaning you won't get any additional time. I could run them consecutive, if I think there's a basis to do that. Just like I'll telling you, I'm not going to give you mitigation. I can't imagine a circumstance where I would make them consecutive, but I certainly have that right and the Commonwealth

-2-

may ask for me to run them consecutive. I may or may not. I don't know. That is the term of your exposure in terms to pleading open.

. . . [brief discussion of Defendant's probation and parole matters]

**PROSECUTOR:** Just so the record is clear, this was at the request of the defendant, yesterday after Ms. Ingraham testified, my understanding is that he asked his counsel to approach me to get the eight to 20 back, so this was not an out of blue. I'm giving him an different offer. The defendant requested it yesterday sometime before 4:00 p.m. and now, is deciding against pleading.

**THE COURT:** That's fine. So let me do this: Do you wish to go trial, continue the trial or do you wish to plead guilty?

**DEFENDANT:** I want to confer with my attorney.

(Brief pause.)

**PROSECUTOR:** Judge, I'll step back, just so he can have a conversation out of my earshot.

**THE COURT:** Okay.

(Brief pause.)

**THE COURT:** Before you go, I want to be clear. Mr. Jenkins, you understand I'm not telling you you're going to get 8 1/2 years to 17?

**DEFENDANT:** Yes.

**THE COURT:** You can get ten to 20, exactly what the Commonwealth is offering. Do you understand that?

**DEFENDANT:** Yes.

**THE COURT:** You could also get the 8 1/2 to 17, but I'm not being bound by any of that, any of the discussions that you're having because you're pleading open. That means I'll hear from [defense counsel] what the sentence would be. I'll hear from [the prosecutor] as to what the sentence would be and then I decide what is reasonable and appropriate, given the guidelines and everything else we talked about. Is that clear?

**DEFENDANT:** Yes.

**THE COURT:** You're not going in there thinking there's some promise or guarantee that I'm making to you as to what the sentence would be.

**DEFENDANT:** No. You already explained to me that my sentence would be anywhere from eight –

**THE COURT:** 8 1/2.

**DEFENDANT:** 8 1/2 and 10 years and you said.

**THE COURT:** As a minimum.

**DEFENDANT:** As a minimum sentence. You said, anything else that I would get sentenced to could be run concurrent, along with [Judge] Schulman's probation and you said if I didn't plead guilty, I guess I get 25, 30, whatever you said, it was one of them big numbers.

| | |
|---|---|
| THE COURT: | That is not a threat. Do you understand that? |
| DEFENDANT: | No. It sounds like a threat. |
| THE COURT: | It is not a threat. It is just, I'm telling you that if you were to be convicted of the attempted murder, it is a different charge of aggravated assault, carries with it a much higher penalty. It is not a threat. It is the sentence guidelines. Do you understand that? |
| DEFENDANT: | Yes. |
| THE COURT: | Do you understand -- am I threatening you in some way? |
| DEFENDANT: | No, no. |
| THE COURT: | And then as to the other violation charge, violation of the uniform firearms act and the PIC charge, I'm certainly saying that my standard practice would be to run that concurrent. Is that a yes? |
| DEFENDANT: | Yes. |

. . . [Defendant consulted with his attorney]

| | |
|---|---|
| THE COURT: | Anyone promise you anything in exchange for you to give up your right to a trial? |
| DEFENDANT: | No. |
| THE COURT: | Anyone threaten you to give up your right to a trial? |
| DEFENDANT: | No. |

. . . [trial court informed Defendant about consequences for probation and parole]

| | |
|---|---|
| THE COURT: | You've heard -- be given the guideline low end of 8 1/2 to 17, on the upper end 10 to 20. You heard me say that could be a starting point for me to consider those guidelines. Do you understand that? |
| DEFENDANT: | Yes. |
| THE COURT: | I'm not promising you whether it would be 8 1/2 to 17 or 10 to 20. Do you understand that? |
| DEFENDANT: | Yes. |

. . . [Commonwealth stated factual basis for plea]

| | |
|---|---|
| THE COURT: | And Mr. Jenkins, having heard those facts the Commonwealth believe they could prove at trial, do you understand -- do you agree with the statement of facts? |
| DEFENDANT: | Yes. |
| THE COURT: | Are you pleading guilty because you're guilty or pleading guilty for some other reason? |
| DEFENDANT: | I'm pleading guilty because I'm guilty. |
| THE COURT: | And do you want to arraign him. |
| THE CRIER: | Mark Jenkins, to this Common Pleas Docket, CP-51-CR-0011317 charging you with aggravated assault. How do you plea. |
| DEFENDANT: | Guilty. |
| THE CRIER: | Charging you with possession of a firearm prohibited. How did you plea? |
| DEFENDANT: | Guilty. |

-4-

| | |
|---|---|
| **THE CRIER:** | Charging you with firearm not to be carried without a license. How do you plea? |
| **DEFENDANT:** | Guilty. |
| **THE COURT:** | Charging possession of an instrument of crime? |
| **DEFENDANT:** | Guilty. |

N.T. 10/21/2015 at 4-19.

In addition to this extensive colloquy between the trial court and Defendant, Defendant also signed a written guilty plea form that informed him, *inter alia*, the consequences of pleading guilty and the maximum period of incarceration for the charges to which he pleaded guilty. *See* Defendant's Written Guilty Plea Colloquy at 1-4.

DISCUSSION

1.    Defendant's Guilty Plea Was Knowing And Voluntary

Defendant argues that his plea was not voluntary because the trial court "induc[ed] Defendant] to plead guilty to aggravated assault and firearm offenses by telling [Defendant] that he would likely be given a concurrent minimum sentence of between 8 and a half to 10 years for his plea but that if convicted at trial, the court could impose consecutive sentences and the charges carried separate higher minimum penalties of 10 and 7 and 5 years, and that attempted murder carries a much higher penalty." *See* Statement of Errors Complained of on Appeal, at ¶ 5(A).

"A plea of guilty forecloses challenges to all matters except the voluntariness of the plea, the jurisdiction of the court, or the legality of the sentence." *Commonwealth v. Stewart*, 867 A.2d 589, 591 (Pa. Super. Ct. 2005). The Pennsylvania Supreme Court has explained the following standard when evaluating whether a guilty plea is knowing and voluntary:

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of

the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

*Commonwealth v. Eichinger*, 108 A.3d 821, 832 (Pa. 2014).

Here, the trial court and Defendant engaged in an extensive discussion regarding the potential minimum sentences that he could receive:

| | |
|---|---|
| **THE COURT:** | Do you understand if you plead guilty, it will be to the aggravated assault, the guidelines on that, which I think I stated about 102 months to 120, which would be 8 1/2 years as a standard guideline sentence, 8 1/2 to 17 on the low end, 10 to 20 on the upper end. Those -- I couldn't tell you what the sentence would be, because I don't know enough about you and the other sentences, which are the violation of the uniform firearms act and PIC, you say? |
| **MS. BUNTING:** | Yes. |
| **THE COURT:** | Those would likely be concurrent. Of course, they can be consecutive and those carry separate penalties of ten and seven and five years. Do you understand that? |
| **DEFENDANT:** | Uh-huh. |
| **THE COURT:** | Yes. |
| **DEFENDANT:** | Yes. You just said that the open plea carries eight and ten, right? |
| **THE COURT:** | Well, these are just guidelines. |
| **DEFENDANT:** | Yes. |
| **THE COURT:** | The guidelines are advisory and for every court, they're a starting point. On the low end of the guidelines would be 8 1/2 years. |
| **DEFENDANT:** | Okay. |
| **THE COURT:** | The upper would be the maximum 10 years. So if I were to give you a guideline sentence, it can be anywhere from 8 1/2 to 10 years a minimum sentence. |
| **DEFENDANT:** | Okay. |

N.T. 10/21/2015 at 5-6. The trial court specifically told Defendant that "I can't tell you what the sentence would be, whether it be the 8 1/2 to 17 or 10 to 20, because I don't know enough about you. A presentence, which will fill me in on all the other details, on the things that I have to consider. That is just the starting point." *Id.* at 7.

After this discussion, the trial court confirmed with Defendant that he understood the range of sentences:

| | |
|---|---|
| **THE COURT:** | Before you go, I want to be clear. Mr. Jenkins, you understand I'm not telling you you're going to get 8 1/2 years to 17? |
| **DEFENDANT:** | Yes. |

-6-

| THE COURT: | You can get ten to 20, exactly what the Commonwealth is offering. Do you understand that? |
| DEFENDANT: | Yes. |
| THE COURT: | You could also get the 8 1/2 to 17, but I'm not being bound by any of that, any of the discussions that you're having because you're pleading open. That means I'll hear from [defense counsel] what the sentence would be. I'll hear from [the prosecutor] as to what the sentence would be and then I decide what is reasonable and appropriate, given the guidelines and everything else we talked about. Is that clear? |
| DEFENDANT: | Yes. |
| THE COURT: | You're not going in there thinking there's some promise or guarantee that I'm making to you as to what the sentence would be. |
| DEFENDANT: | No. You already explained to me that my sentence would be anywhere from eight – |
| THE COURT: | 8 1/2. |
| DEFENDANT: | 8 1/2 and 10 years and you said. |
| THE COURT: | As a minimum. |
| DEFENDANT: | As a minimum sentence. You said, anything else that I would get sentenced to could be run concurrent, along with [Judge] Schulman's probation and you said if I didn't plead guilty, I guess I get 25, 30, whatever you said, it was one of them big numbers. |
| THE COURT: | That is not a threat. Do you understand that? |
| DEFENDANT: | No. It sounds like a threat. |
| THE COURT: | It is not a threat. It is just, I'm telling you that if you were to be convicted of the attempted murder, it is a different charge of aggravated assault, carries with it a much higher penalty. It is not a threat. It is the sentence guidelines. Do you understand that? |
| DEFENDANT: | Yes. |
| THE COURT: | Do you understand -- am I threatening you in some way? |
| DEFENDANT: | No, no. |

*Id.* at 10-12.

During the sentencing hearing, the trial court allowed Defendant to consult with his defense attorney twice. After Defendant's second consultation with his defense attorney, the trial court confirmed that there were no promises or threats for Defendant to enter into a guilty plea:

| THE COURT: | Anyone promise you anything in exchange for you to give up your right to a trial? |
| DEFENDANT: | No. |
| THE COURT: | Anyone threaten you to give up your right to a trial? |
| DEFENDANT: | No. |

. . .

-7-

| | |
|---|---|
| **THE COURT:** | You've heard -- be given the guideline low end of 8 1/2 to 17, on the upper end 10 to 20. You heard me say that could be a starting point for me to consider those guidelines. Do you understand that? |
| **DEFENDANT:** | Yes. |
| **THE COURT:** | I'm not promising you whether it would be 8 1/2 to 17 or 10 to 20. Do you understand that? |
| **DEFENDANT:** | Yes. |

*Id.* at 14, 16.

Given this extensive colloquy, Defendant's responses and the trial court's observation of Defendant's demeanor as he was giving those responses, the trial court was satisfied that Defendant understood the potential range of sentences that he could receive as well as that he was not induced, promised, coerced or threatened to plead guilty. As such, Defendant's claim that his guilty plea was not voluntary fails.[1]

> 2.    The Trial Court Did Not Abuse Its Discretion In
> Denying Defendant's Motion To Withdraw His Guilty Plea

Defendant argues that the trial court abused its discretion by refusing to allow him to withdraw his guilty plea after sentencing because his plea was not voluntary. *See* Statement of Errors Complained of on Appeal, at ¶ 5(B). A "defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified. 'A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently.'" *Commonwealth v. Pantalion*, 957 A.2d 1267, 1271-72 (Pa. Super. Ct. 2008) (quoting *Commonwealth v. Muhammad*, 794 A.2d 378, 383 (Pa. Super. Ct. 2002).

---

[1] Somewhat surprisingly, Defendant claims that the trial court erred or induced Defendant to plead guilty when it informed Defendant of the maximum sentences that could be imposed if he was convicted at trial of the attempted murder charge and that the trial court could impose consecutive sentences. In fact the opposite is true: if the trial court failed to advise Defendant of the maximum period of incarceration or that the sentences could be imposed consecutively, that would likely be a basis for withdrawal of the plea. *See generally Commonwealth v. Persinger*, 615 A.2d 1305, 1306-07 (Pa. 1992) (sentencing court must advise defendant of the maximum sentence imposable for each conviction as well as that the sentences can be imposed consecutively).

Here, Defendant did not request to withdraw his plea based upon a claim that his plea was not voluntary. To the contrary, Defendant sought to withdraw his plea only on the mere assertion that he was innocent, which does rise to the level of manifest injustice. *See* Supplemental Post Sentence Motion To Withdraw Guilty Plea, at ¶ 6. Thus, there is no merit to Defendant's claim that he sought to withdraw his guilty plea because his plea was not voluntary, and, even if he did properly preserve this claim for appellate review, Defendant's plea was knowing, intelligent and voluntary, *supra* at 5-8.[2]

3.     The Trial Court Did Not Abuse Its Discretion In Imposing A Guideline Sentence

In his third claim of error, Defendant argues that the trial court erred in imposing a "manifestly excessive" sentence by considering "evidence of conduct that [Defendant] was never charged with nor convicted of, namely that [Defendant] shot someone, and where the court impermissibly based the sentence imposed on the severity of the offense and [Defendant's] prior record, both of which are already accounted for in the Sentencing Guidelines." *See* Concise Statement of Errors Complained of on Appeal, at ¶ 5(C).

a.     Defendant Fails To Raise A Substantial Question Regarding The Sentence

As an initial matter, defendants do not have an automatic right to an appeal in regards to the discretionary aspects of sentencing. *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. Ct. 2010). Thus, when challenging a discretionary aspect of sentencing, a defendant must present a substantial question that forms the basis for grounds to appeal. *Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa. Super. Ct. 2006). A substantial question "exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the sentencing code; or (2) contrary to the fundamental

---

[2] Additionally, it was not error for the trial court to have not scheduled a hearing on Defendant's motion to withdraw his guilty plea. *See generally Commonwealth v. Stork*, 737 A.2d 789, 791 (Pa. Super. Ct. 1999); Pa.R.Crim.P. 720(B)(2) (hearings on post-sentence motions are at the discretion of the trial court).

-9-

norms which underlie the sentencing process." *Commonwealth v. Austin*, 66 A.3d 798 (Pa. Super. Ct. 2013).

Here, Defendant presents no substantial question regarding the discretionary aspects of his sentence (*e.g.*, whether to impose a concurrent or consecutive sentence) and, as a result, he has no automatic right to appeal. Defendant cannot present a substantial question because there is no allegation that the sentence was inconsistent with a specific provision of the sentencing code or contrary to the fundamental norms that underlie the sentencing process. As such, the appellate court should deny consideration of any alleged error in Defendant's sentence because he cannot identify a substantial question regarding his sentence.

b.      The Trial Court Did Not Impose An Unduly Excessive Sentence

The "proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). An "abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless 'the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.'" *Id.* (quoting *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996)). Moreover, an abuse of discretion will not be found "merely because an appellate court might have reached a different conclusion." *Id.* (quoting *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003)).

In sentencing a defendant, the sentencing court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa. Con. Stat. § 9721(b). Additionally, the sentencing court should consider "(1) [t]he nature and circumstances of the offense and the history and characteristics of the defendant, (2) [t]he opportunity of the

sentencing court to observe the defendant including any presentence investigation, (3) [t]he findings upon which the sentence was based, and (4) [t]he guidelines promulgated by the [sentencing] commission." 42 Pa. Cons. Stat. § 9781(d).

Here, Defendant's prior record score was a RFEL, and the offense gravity score for the aggravated assault conviction was an 11. Under the Pennsylvania Sentencing Guidelines, the standard range for the aggravated assault conviction with the deadly weapon enhancement was 102 months to 120 months, plus or minus 12 months. The trial court sentenced Defendant to a sentence of 120 months to 240 months for the aggravated assault conviction with concurrent sentences for the VUFA and PIC convictions. The trial court also sentenced Defendant to a concurrent sentence of 3 years to 6 years for his violation of Judge Schulman's probation.

In imposing the sentence, the trial court considered, *inter alia*, Defendant's pre-sentence investigation, its opportunity to observe Defendant during his guilty plea and the sentencing hearing, counsels' arguments, testimony from Defendant's witnesses during the sentencing hearing, Defendant's statement to the trial court during the sentencing hearing, and Defendant's psychological evaluation. The trial court considered the following mitigating and aggravating factors: (1) Defendant's extensive family support; (2) Defendant's acceptance of responsibility by pleading guilty; (3) the abuse Defendant suffered during childhood, (4) Defendant's mental health issues, (5) the fact that some of Defendant's prior convictions were for specific violent offenses including robbery, sexual assault and witness intimidation, and (6) Defendant's previous violations of probation and parole. *See* N.T. 10/02/2015 at 4-5, 12-16, 21-24.

Based upon the foregoing, the trial court's sentence was consistent with the protection of the public, the gravity of the offense, the impact of the crime on the victim, and Defendant's rehabilitative needs. Although the trial court imposed the maximum statutory sentence for aggravated assault, the sentence imposed was at the top of the standard range of the sentencing

-11-

guidelines due to Defendant's prior record score, the offense gravity score for the aggravated assault conviction, and the deadly weapon enhancement. For these reasons, Defendant's sentence was reasonable and an appropriate exercise of its discretion.

Defendant's argument that the trial court based its sentencing on a fact not in evidence – that Defendant shot the victim – is without merit. During the guilty plea and the sentencing hearings, Defendant admitted that he possessed a firearm, that he fired three shots at Charles King and that one of the shots struck King at his hip. N.T. 10/21/2015 at 17-18; N.T. 04/01/2016 at 21-22. Additionally, Defendant's argument that the sentence was impermissibly based on the severity of the offense and Defendant's prior record – both of which are already accounted for in the Sentencing Guidelines – is also without merit because the trial court considered the prior convictions only to the extent to which they were for specific violent convictions. The specific violent offenses for which Defendant was previously convicted is not already included in the prior record score and is a permissible consideration under Sections 9721(b) and 9781(d). *See generally Commonwealth v. Simpson*, 829 A.2d 334, 337-38 (Pa. Super. Ct. 2003) (sentencing court "permitted to use prior conviction history and other factors already included in the guidelines if they are used to supplement other extraneous sentencing information;" affirming trial court's aggravated sentence where – in part – sentence was imposed based upon defendant's prior conviction for aggravated assault as a crime of violence); *Commonwealth v. Mills*, 496 A.2d 752, 754 (Pa. Super. Ct. 1985) (sentencing court properly considered seven prior convictions for burglary when sentencing defendant).

## CONCLUSION

For the foregoing reasons, the appellate court should affirm the judgment of sentence.

BY THE COURT:

DANIEL J. ANDERS, JUDGE
Dated: November 14, 2016

**Comm. v. Mark Jenkins**
**CP-51-CR-0011317-2014**
**2208 EDA 2016**

## PROOF OF SERVICE

I hereby certify that I am this day caused to be served the foregoing Order upon this person(s):

Attorney for Appellant:      Karl Baker, Esquire
                             Defender Association of Philadelphia
                             1441 Sansom Street
                             Philadelphia, PA 19102

Type of Service:             CJC Mailbox

Appellee:                    Hugh J. Burns, Jr., Esquire
                             Philadelphia District Attorney's Office
                             3 S. Penn Square
                             Philadelphia, PA  19107

Type of Service:             CJC Mailbox

DATED: 11/14/2016

Raymond T. Dorizio, Esquire
Law Clerk to Hon. Daniel J. Anders