J-S80012-18
J-S80013-18
J-S80014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE F. RISSELL, | |
| Appellant | No. 2247 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 27, 2018
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003597-2010

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE F. RISSELL, | |
| Appellant | No. 2259 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 27, 2018
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0002659-2016

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE F. RISSELL, | |
| Appellant | No. 2261 EDA 2018 |

J-S80012-18
J-S80013-18
J-S80014-18


Appeal from the Judgment of Sentence Entered June 27, 2018
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003017-2017


BEFORE:  BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 12, 2019**

Appellant, George F. Rissell, appeals from the June 27, 2018 judgments of sentence imposed by the trial court in the three cases that we have consolidated herein.  Appellant contends that the court's sentences are excessive in light of the criminal conduct at issue and the specific circumstances of his cases.  After careful review, we affirm.

On January 23, 2012, Appellant pled guilty in CP-15-CR-0003597-2010 (hereinafter "3597-2010") to two counts of aggravated assault, and one count of criminal mischief.  He was sentenced to a term of 12 to 24 months' incarceration, followed by 2 years' probation.  On December 20, 2016, Appellant pled guilty in CP-15-CR-0002659-2016 (hereinafter "2659-2016") to simple assault and possessing an instrument of crime (PIC).  He was sentenced to 364 to 728 days' incarceration, followed by 3 years' probation.

On April 20, 2018, Appellant pled guilty in CP-15-CR-0003017-2017 (hereinafter "3017-2017") to one count of ethnic intimidation and three counts of criminal mischief.  On June 27, 2018, the court sentenced Appellant to consecutive terms of 12 to 24 months' incarceration for each criminal mischief offense, and a consecutive term of 18 to 36 months' incarceration for his ethnic intimidation conviction, totaling an aggregate term of 4½  to 9 years'

incarceration. That same day, the court revoked Appellant's parole for his simple assault conviction in 2659-2016, and sentenced him to serve the balance of the maximum term of 11 months' and 29 days' incarceration. For his PIC offense in that same case, the court revoked Appellant's probation and resentenced him to 1½ to 3 years' incarceration. In 3597-2010, the court revoked Appellant's probation for criminal mischief and imposed a new term of 1 to 2 years' incarceration for that offense. In total, the court's aggregate sentence for all three cases is 7 to 14 years' incarceration.

Appellant filed a timely motion for reconsideration of his sentence, which was denied. He then filed timely notices of appeal on July 24, 2018.[1] Appellant also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 25, 2018, the trial court issued one Rule 1925(a) opinion addressing Appellant's issues pertaining to all three of his cases.

Now, in the briefs filed in cases 3597-2010 and 2659-2016, Appellant presents the following three issues for our review:

> [I.] Does the imposition of revocation sentences totaling 2½ - 5 years for the violation of probation and parole raise a substantial question that the Sentencing Code was violated?

---

[1] Appellant properly filed a separate notice of appeal at each docket number in accordance with **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that, for any appeal filed after June 1, 2018, "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed" in each case; "[t]he failure to do so will result in quashal of the appeal") (footnote omitted).

[II.] Do these sentences constitute an abuse of the trial court's discretion?

[III.] Were these sentences, when combined with the sentence imposed on the new conviction [in 3017-2017], "so manifestly excessive as to constitute too severe a punishment" as contemplated by the Supreme Court in **Commonwealth v. Mouzon**, 812 A.2d 617 (Pa. 2002)?

Appellant's Briefs in 3597-2010 and 2659-2016 at 5.  Additionally, in the brief in 3017-2017, Appellant sets forth the following two issues for our review:

I.      Did the trial court abuse its discretion in imposing three consecutive statutory maximum sentences amounting to [3] years to [6] years' state incarceration following Appellant's open plea to three counts of [a] misdemeanor of the second degree [c]riminal [m]ischief, 18 Pa.C.S.[] § 3304(a)(4)?

II.     In light of the criminal conduct in this case, did the trial court abuse its discretion by imposing all aggravated range sentences and imposing such sentences consecutively amounting to a [4½] to [9] year aggregate sentence?

Appellant's Brief in 3017-2017 at 4.

In assessing these issues, we have reviewed the certified record, the briefs of the parties, and the applicable law.  Additionally, we have reviewed the thorough and well-crafted opinion of the Honorable Patrick Carmody of the Court of Common Pleas of Chester County.  We conclude that Judge Carmody's extensive, well-reasoned opinion accurately disposes of the issues presented by Appellant.  Accordingly, we adopt his opinion as our own and affirm Appellant's judgments of sentence in each of his three, consolidated cases for the reasons set forth therein.

Judgments of sentence affirmed.

J-S80012-18
J-S80013-18
J-S80014-18


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/12/19

- 5 -

Circulated 02/14/2019 02:25 PM

580012-18
580013-18
580014-18

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs.

: CRIMINAL ACTION -- LAW

GEORGE F. RISSELL : NOS. 3597-10, 2659-16 & 3017-17

Nicholas J. Casenta, Jr., Chief Deputy District Attorney for the Commonwealth
Maria T. Heller, Esquire, Attorney for Defendant

RECEIVED

SEP 25 2018

PUBLIC DEFENDER'S OFFICE
COUNTY OF CHESTER

## OPINION PURSUANT TO Pa.R.A.P. 1925

Defendant, George Rissell, has appealed from the judgment of sentence entered against him on June 27, 2018. This Opinion is filed pursuant to Pa.R.A.P. 1925(a).

In docket number 3597-10, defendant pleaded guilty to Aggravated Assault and Criminal Mischief. He was sentenced in accordance with the plea agreement to 12-24 months incarceration followed by 2 years of probation. In docket number 2659-16, defendant pleaded guilty to Simple Assault and Possessing Instruments of Crime. Pursuant to the plea agreement, he was sentenced to 364-728 days incarceration followed by three (3) years of probation. In docket number 3017-17, defendant pleaded open to one (1) count of Ethnic Intimidation and three (3) counts of Criminal Mischief. On June 27, 2018, he was sentenced to 18-36 months incarceration for the Ethnic Intimidation charge, and three (3) consecutive 12-24 month sentences for the criminal mischief charges, for an aggregate sentence of 4 ½-9 years' incarceration. In addition, the court found that the new charges constituted a violation of parole for the prior cases. Defendant was sentenced to consecutive sentences of the balance of the maximum term of 11 months and 29 days for the Simple Assault, 1 ½-3 years for Possessing

- 1 -

Instruments of Crime, and 1-2 years for the prior criminal mischief charge. His total sentence for all three cases was an aggregate 7-14 years' incarceration from the date of sentecing.

Defendant filed his Notices of Appeal on July 24, 2018. On the same day, defendant was ordered to file Concise Statements of Errors Complained of on Appeal, which were received by the court on August 14, 2018. In his Concise Statements, defendant alleges that his aggregate sentence of 4 ½-9 years imprisonment under docket number 3017-17 is too severe a punishment under the circumstances. He further claims that sentencing him to an additional 2 ½ years for his parole violations makes his sentence manifestly excessive. See Defendant's Concise Statements of Matters Complained of on Appeal.

42 Pa.C.S.A. §9721 sets forth the types of sentences that can be imposed by a court in this Commonwealth. It also indicates the factors that should be taken into account when determining the appropriate punishment. The statute states in relevant part:

(a) General rule.--In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.
(2) A determination of guilt without further penalty.
(3) Partial confinement.
(4) Total confinement.
(5) A fine.
(6) County intermediate punishment.
(7) State intermediate punishment.

* * * * *

(b)    General standards. – In selecting from the alternatives set forth in subsection (a) the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the

- 2 -

court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

42 Pa.C.S.A. §9721. It should be noted that in this Commonwealth:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion. However, the sentencing court must state its reasons for the sentence on the record, which in turn aids in determining "whether the sentence imposed was based upon accurate, sufficient and proper information. . . ." When imposing sentence, a court is required to consider "the particular circumstances of the offense and the character of the defendant." In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. "It must be demonstrated that the court considered the statutory factors enunciated for determination of sentencing alternatives, and the sentencing guidelines." Additionally, the court must impose a sentence which is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." Where the sentencing judge had the benefit of a pre-sentence report, however, it will be presumed that he "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."

Com. v. Dotter, 589 A.2d 726, 730 (Pa. Super. 1991) (citations omitted). See also, Com. v. Andrews, 720 A.2d 764 (Pa. Super. 1998) and Com. v. Lawson, 650 A.2d 876 (Pa. Super. 1994).

In the instant case, defendant was correctly sentenced in accordance with 42 Pa.C.S.A. §9721 and existing case law. The court took into account all relevant factors, including all the information provided in the presentence report and considered the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. After considering defendant's lengthy prior criminal record, the failure of all prior efforts at rehabilitation, the

- 3 -

seriousness of the crimes charged, and all other factors, the court determined that an aggregate sentence of 7-14 years' incarceration was warranted. The Commonwealth was actually seeking a longer sentence of 8 ½-18 years imprisonment. See N.T. 6/27/18, p. 9. It should be noted that all of the sentences defendant received were well within the statutory limits for the crimes of which he was convicted. Accordingly, defendant's sentence is proper and should be upheld.

The court acknowledges that the sentences defendant received for the Criminal Mischief charges were in the aggravated range. The court felt that there were several aggravating factors that mandated this kind of sentence. Specifically, the court considered the effect these crimes had on the victims and on the community in which they occurred, the fact that they occurred while defendant was on parole, the fact that these crimes occurred shortly after defendant's release from prison, and the defendant's conduct while he was in prison.

As stated above, 42 Pa.C.S.A. §9721 states in relevant part, "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. §9721(B). Pursuant to the statute, "the court should consider the information set forth by the victim concerning the sentencing, the impact of the crime on himself or his family, and finally the impact the offense had on the community." Commonwealth v. King, 182 A.3d 449, 455 (Pa. Super. 2018). At the sentencing hearing, Paster Lauraine Acey testified to the impact these crimes had on her personally, and on the community at large. She stated that this incident was very upsetting to her personally, because members of her family had been lynched in the past. N.T. 6/27/18, pp. 20-21. She also testified that members of her church were angry, upset and fearful, because they did not realize that individuals living so close to them had this type of

- 4 -

attitude. N.T. 6/27/18, p. 22. This evidence was properly considered by the court as an aggravating factor pursuant to 42 Pa.C.S.A. §9721, Commonwealth v. King, 182 A.3d 449, 455 (Pa. Super. 2018), Commonwealth v. Penrod, 578 A.2d 486 Pa. Super. 1990), and Commonwealth v. Bromley, 862 A.2d 598, 605 (Pa. Super. 2004).

In determining the proper sentence in this case, the court also considered the fact that defendant was on parole when this incident occurred. This is an appropriate factor to look at when determining a defendant's sentence. See, e.g., Commonwealth v. Cappelli, 489 A.2d 813 (Pa. Super. 1985) and Commonwealth v. Mills, 496 A.2d 752 (Pa. Super. 1985).

Further, defendant committed these crimes after only being released from prison for approximately one month for other crimes. The instant case is very similar to Commonwealth v. Phillips, 601 A.2d 816 (Pa. Super. 1992), in which the Pennsylvania Superior Court noted, "appellant had spent nearly all his adult life in confinement, had only recently been released prior to committing this crime and there appeared to be little prospect appellant would change his behavior if allowed to return to the community." Commonwealth v. Phillips, 601 A.2d 816, 824 (Pa. Super. 1992), aff'd, 633 A.2d 604 (Pa. 1993).

In addition, defendant had been written up for fighting while he was in prison and received 33 days restriction. He was also cited for creating an unsanitary condition. The Pennsylvania Superior Court has stated:

> [T]he [Pennsylvania Sentencing] Code directs the trial judge to consider the defendant's character in every case in which a defendant is sentenced to a term of imprisonment. *See* §§ 9725, 9722(9), 9721(b), cited *supra.* Today we interpret the Sentencing Code in light of the United States Supreme Court's key finding in Skipper: that "a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination." 476 U.S. at 7, 106 S.Ct. at 1672, 90 L.Ed.2d at 8 (footnote omitted).

Commonwealth v. Losch, 535 A.2d 115, 122 (Pa. Super. 1987). Just as a court should consider a defendant's good behavior while in prison, the court can also take into account a defendant's poor behavior while in prison. Thus, in the instant case, it was proper for the court to consider defendant's behavior while he was incarcerated.

In this case, defendant spray painted racially intimidating graffiti on a number of cars, garages, store fronts and municipal property in Coatesville, Pennsylvania, which has a large minority population. The graffiti consisted of swastikas, racial slurs, and white supremacy symbols. This incident occurred only ten days after the rally in Charlottesville, Virginia when racial tension in this country was already very high. At the time of sentencing, defendant was 25 years old. He had spent five (5) out of his seven (7) adult years behind bars. This incident occurred just over a month after he was released from prison for a prior offense. In fact, every time he is released, he commits another crime shortly thereafter.

The court properly took into account all relevant factors and explained at great length:

> Under 42 PA 9721, the Court will follow the general principle of the sentence imposed and shall call for confinement that is consistent with the protection of the public, the gravity of the offense, and the impact on the life of the victim and on the community and the rehabilitative needs of the defendant.
>
> In this case, let's go through the defendant's prior record. December 2008, he was adjudicated for stalking, said he was going to get a shotgun and blow off the face, I guess, of the father of somebody.
>
> Putting that aside, let's just deal with the adult stuff. 2010, aged 18, he is convicted of two aggravated assaults. Prison one to two years for one, concurrent two for four years for another. First aggravated assault September 26th, 2010 he hit the victim twice with a stick causing lacerations to the scalp that needed staples to fix and bragged about it afterwards.
>
> Two months after that, November 25th, 2010, defendant stabbed the victim with a screwdriver causing a puncture wound, punched the victim, and at one point ran and got a chainsaw. Fortunately, he didn't use it in that particular case.

-6-

While on probation for those two aggravated assaults, he had a new simple assault, and again, when you -- I'm only considering the simple assault. . . .

But in that case, there is a new simple assault on July 20th, 2017, he stabbed a person during that simple assault and possession of an instrument of crime. He goes to jail for that. He gets out. A month later -- approximately a month later, we have this case. So previously you had a weapon as a stick, a screwdriver, a knife, a chainsaw, and now this time it's a paint can.

I find it's an aggravating factor for the following facts: He committed additional crimes while on parole. That is an aggravating factor under Cappelli, C-A-P-P-E-L-L-I. You committed a new crime while on probation a short time after you got out, Commonwealth v. Phillips. Arguably the brash nature of the crime, but I understand Mr. Schenker's argument that this crime in and of itself was inherently despicable. That's the only word for that. So I'm not punishing for the nature of the crime because the nature of the crime is encapsulated in that.

Your conduct in prison under Commonwealth versus Losch, L-O-S-C-H, is an aggravating factor. Discuss -- and aggravating things are things that make this crime worse. Mitigated things make it better.

Let's look at that. The mental health aspect, 2008, you were referred -- your father referred you to Human Services that is because you hadn't shown up to school three-quarters of the time, and you had defied all authority. You were expelled because you were using drugs at school. Human Services said mental health was inappropriate at that time, but yes on drug and alcohol. So it goes back ten years to start dealing with the drug and alcohol and have an opportunity to deal with any drug and alcohol problem.

Back then, Dr. Mapes diagnosed you in 2008 as having a defiant disorder, which is another way of saying you don't do what people tell you to do. Attentional deficit disorder, conduct disorder, a history of simple assault, and he predicted that you had a high risk of future delinquent behavior, which was absolutely right.

Dr. Atkins, the current report said that when you spoke to him, you didn't really offer any excuses for your behavior, but that the racist attitudes were dissipating at the time of this crime, which I guess is the whole thing that you're turning a new leaf in the one month you are out of prison. That could have fooled me, but I'm not talking about your words. I'm talking about your actions.

He concludes with proper treatment, you're capable of becoming a productive member of society and the risk of recidivism will be low. I don't know how you can say that in this case. You've been out -- you've been an adult seven years.

- 7 -

You have been in jail five years. Every single time you have been out, you commit a new crime shortly after that.

I mean, if I ever saw an example of someone who is going to be a recidivist sadly it is -- maybe -- and I'm hoping that you have a good support system. You have all these people that love you here, and they wrote nice words about you. And they talk about you having African American friends and they talked about other stuff. Maybe it's sincere, but, boy, your actions sure don't speak that way.

Alcohol -- drug and alcohol abuse, you've had opportunities to get treatment for it. You have been in and out of state prison with that. Bottom line here is being drunk, I don't care. We don't know if you're drunk. It may be worth it. But it doesn't excuse you from being a racist. That just reveals you for who you are. It lowers your inhibitions. So if you are going to write kill all the black people -- and I'm not being polite now. I'm tired of saying the N-word. You run around saying that stuff, it reveals who you really are. You are doing it to your neighbors, people that live close-by. Then you go back further into Coatesville with kill all the niggers. It is specifically stated for a reason.

The gravity of the offense. Let's talk about the effect. We had Dr. Acey and Paster Acey. I can't even imagine within days after Charlottesville, Virginia where the ugly history of lynching -- and lynching has been a part of this country's history since forever, since African Americans were brought here and treated in the despicable way they were -- how upset people would be having that here.

We already went through a couple years ago in Coatesville with white people setting fires in Coatesville. The whole community is on edge, and you do that. It -- it's -- and, you know what, a statement about Coatesville. Coatesville gets a bad rep. Coatesville is a good town. . . . Because people from Coatesville are proud of being from Coatesville because it's a community that the people do get together -- live together well. It's just when you do stuff like that, it makes it horrible. . . .

But here is the thing, you're in prison, and you are in this cult and you're a cult follower is the theory. Well, you're not a follower. You took the baton of hatred, came out, and you spread it in Coatesville. It's not like you've got somebody threatening you outside, hey, write all these horrible things out. That's on you. It's not on anybody in state prison. That is, you're away from those guys, you're only a month out and you say, I don't like it out here, maybe I'll go back into state prison because that is the only place I know where to survive.

The issue of whether it's a violent crime or not. They didn't even know -- the people in Coatesville don't know who's writing this. It could be white supremacists. It could be anybody. They're terrified. Who is doing this? If

- 8 -

they knew, oh, the guy who did it has previously assaulted people with knives, sticks, whatever, it wouldn't have made them feel any better. It's when you -- when a person like you with a history of violence makes threats, it raises a real concern.

. . . If you look at the definition of crime of violence in the Crimes Code, it's not. One of the arguments I've had over the years, burglary is considered a crime of violence. Why is burglary, breaking into someone's house, why is that a crime of violence? Because it destroys the peace of mind of the people sitting in that house. They can never close that door again without feeling that they will be violated.

How do you think the people living in that neighborhood felt? They – you – you destroyed their peace of mind. And when you're doing that – so it's not technically a crime of violence, but when you spray paint kill all the niggers in Coatesville, a city of a large minority population, you're both trying to scare them and you're trying to incite violence. I agree with the DA's description, it's pouring gas on the fire. It definitely is, especially if you look at where it's done, you look at when it's done, you look at how it's done, all those things.

Maybe you change your mind. Maybe you -- maybe you with your support system and you look into the mirror and whatever, you turn your thinking. But someone else, some little punk seeing that there and gets stoked up for whatever reason, he might take that baton of hatred and go with it. So you might influence someone just like the guys influenced you in state prison to do something horrible.

The protection of the public – your performance with Probation and Parole has been a disaster. You haven't done what you are supposed to do. You've always committed a new crime or encouraged someone else to do it. . . .

N.T.6/27/18, pp 50-57. After announcing the sentence, the court acknowledged:

That is a heavy sentence. I totally understand it. I'm compelled to do it, sir, because your resume of violence is bad. And then to couple with this is not simply sentencing someone on writing horribly stupid things. It's not just that. It's what you have done in your past. Your resume is just not good.

N.T. 6/27/18, p. 58. Based on the totality of the circumstances and after applying all relevant factors, the court properly sentenced defendant in this matter.

- 9 -

Based on the foregoing, the court finds that defendant's alleged assignments of error are without merit.

BY THE COURT:

_9/24/18_
DATE

Patrick Carmody
PATRICK CARMODY                    J.

Certified From The Record
This ____ Day of _____ 20__
Deputy Clerk of Common Pleas Court

- 10 -